**FILED**
**DEC 2 6 2013**
Clerk, U.S. District and
Bankruptcy Courts

In the United States District Court
for the District of Columbia

Charla Sizemore Pearson (Complainant)
6149D Edsall Rd
Alexandria, VA 22304-4181
703-5088503 (cell)/703-751-1958 (condo)
charlals@gmail.com (electronic mail)

v.                                Civil Action

Penny Pritzker,
Secretary (Defendant)
Deppartment of Commerce,
Agency
Washington, DC 20001

Case: 1:13-cv-02052
Assigned To : Leon, Richard J.
Assign. Date : 12/26/2013
Description: EMPLOY. DISCRIM.

## COMPLAINT

### Grounds for Jurisdiction

In regards to Agency No. 09-51-0743, the Department of Commerce (henceforth referred to as Agency), hand-delivered its final decision to me on June 9, 2001 at my workplace, the EEO Office in the US Census Bureau in Suitland, MD. On July 9, 2011, I filed an EEOC Office of Federal Operations (OFO) appeal to said Agency decision via facsimile and retained a cover sheet with a verification log to show proof of delivery within 30 calendar days. My EEOC OFO appeal was incorrectly dismissed in the attached document dated August 20, 2013, without consideration of documentation provided nor any request for justification to invoke waiver or equitable tolling for filing the appeal, usually considered pursuant to 29 C.F.R. δ 1614.403 (c) (See Exhibit 1).

I am therefore initiating my right to file a civil action against the Agency according to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. δ 2000e et seq; the Rehabilitation Act of 1973, as amended, 29 U. S. C. δδ 791, 794 (c), and am requesting counsel (ZO610) since I do not have an attorney and am unable to afford one (see Exhibit 2). I have elected to file this civil action within 90 days of my receipt of this decision (receipt date 9/2/13 at my business post office box - See Exhibit 3).

### Facts of the Case

The facts of this complaint are set forth in Exhibit 4. Page Two (2), Paragraph Six (6) provides accepted and added bases for this instant complaint. This paragraph also requests that this court consider of my prior and recent submission of discriminatory acts from 2004 to present be consolidated into this action in evidence of a continuing violation reviewed in this venue.

**RECEIVED**
**DEC -2 2013**
**DEC 1 8 2013**  Clerk, U.S. District and
Bankruptcy Courts

I am requesting a trial by jury.

Remedies (to be made whole)

- for disparate treatment:
    - back pay due to lack of reasonable diligence for two (2) prior years ($220,000) ;
    - injunctive relief to include expungement of any adverse personnel records, and against future retaliation upon employment; and attorney's fees.

- compensatory and punitive damages:
    - future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life; and,
    - for show of reckless indifference and malice with knowledge of acts in violation of federal law ($325, 000).

- front pay and lost future earnings:
    - front pay for intangible non-pecuniary loss since reinstatement is not possible, for injury to professional standing, character and reputation (length of employment - (72 - 57) years x $ 112,000 = $ 1.28million).

*Charla Sizemore Pearson*

Charla Sizemore Pearson
6149D Edsall Rd
Alexandria, VA 22304-4181
703-5088503 (cell)/703-751-1958 (condo)
charlals@gmail.com (electronic mail)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Charla Sizemore Pearson,
Complainant,

v.

Penny Pritzker,
Secretary,
Department of Commerce,
Agency.

Appeal No. 0120113882

Hearing No. 531-2010-00251X

Agency No. 09-51-00743

DISMISSAL OF APPEAL

Complainant filed an appeal with this Commission from the Agency's decision dated April 8, 2011, concerning her complaint of unlawful employment discrimination. The record indicates that Complainant filed her complaint alleging discrimination based on race (African-American) and age (over 40) when she was subjected to harassment since November, 2008. EEOC Regulation 29 C.F.R. §1614.402 provides that appeals to the Commission must be filed within 30 calendar days after complainants receive notice of the Agency's decision.

The record clearly indicates that the Agency sent its final decision via certified mail with return receipt on April 8, 2011, to Complainant's address of record. However, it was not claimed by Complainant and was returned back to the Agency on May 23, 2011.[1] On appeal, Complainant acknowledged that the Agency ultimately hand-delivered the final decision to her on June 9, 2011, at her workplace. However, Complainant did not file her appeal until August 8, 2011, which was beyond 30 days after her receipt of the final Agency decision. The record reveals that the Agency's final decision explicitly informed Complainant of the time limits on her right to appeal.

On appeal, Complainant indicates that she filed her appeal on July 9, 2011. However, Complainant provides no evidence, other than submitting a copy of facsimile cover page dated

---

[1] The record indicates that at the time of the complaint, Complainant was an Equal Employment Specialist (Team Lead), GS-0260-13, with the Agency's EEO Office.

July 9, 2011, that she actually filed her appeal on July 9, 2011. The July 9, 2011 date on the facsimile provided by Complainant is not a facsimile machine produced date but rather simply a typed date. Based on the foregoing, we find that Complainant fails to submit adequate justification to invoke waiver or equitable tolling for filing the appeal.

Accordingly, the appeal is DISMISSED as untimely pursuant to 29 C.F.R. § 1614.403(c).

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you

3                                                                                      0120113882

work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

*/s/ Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

August 20, 2013
Date

4                                                                                                  0120113882

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Charla Sizemore Pearson
6149-D Edsall Rd
Alexandria, VA  22304


Susan J Aramaki, Director
Office of Civil Rights
Department of Commerce
14th & Constitution Ave., NW #6012
Washington, DC  20230


August 20, 2013
Date

_____
Compliance and Control Division

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 77960
WASHINGTON, DC 20013

OFFICIAL BUSINESS

Reference #: 0120113882
Charla Sizemore Pearson
6149-D Edsall Rd
Alexandria, VA 22304

$00.46 US Postage, Pitney Bowes, AUG 20 2013, MAILED FROM ZIPCODE 20507

NOTIFY SENDER OF NEW ADDRESS
SIZEMORE PEARSON
PO BOX 716
DUMFRIES VA 22026-0716

BC: 220260716

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 77960
WASHINGTON, DC 20013

OFFICIAL BUSINESS

Reference #: 0120113882
Charla Sizemore Pearson
6149-D Edsall Rd
Alexandria, VA 22304

NOTIFY SENDER OF NEW ADDRESS
SIZEMORE PEARSON
PO BOX 716
DUMFRIES VA 22026-0716

BC: 22026071616



02 1A
0004601824
MAILED FROM ZIP CODE 20013
$00.46
AUG 20 2013
PITNEY BOWES

| | |
|---|---|
| **CHARLA SIZEMORE PEARSON** ) | |
| ) | |
| VS ) | AGENCY NO: 09-51-00743 |
| ) | |
| U.S. DEPARTMENT OF COMMERCE ) | |

I, **Charla Sizemore Pearson**, pursuant to 28 U.S.C. § 1746, hereby declare I am submitting this statement in response to my complaint of discrimination against the Department of Commerce.

I have been advised that the following are the accepted claims and allegations:

Complainant, an Equal Employment Specialist (Team Lead), GS-0260-13, with the Equal Employment Opportunity (EEO) Office, U.S. Census Bureau, alleges that due to my race (African-American), age (DOB: September 28, 1951), disabilities (Osteosporosis, Carpal Tunnel Syndrome and Hypertension), and prior EEO activity - complainant, witness)*, I was subjected to the following acts of disparate treatment and a pattern of harassment constituting a hostile work environment in continuing violation by Cynthia Shipley, Deputy Director, EEO Office, and Roy Castro, Director, EEO, since November 2008:

1. Shipley and Castro reduced the number of days I was allowed to telework, and have demanded that I only be out of the office one (1) day a week for any reason, although they are both allowed to work flexible work schedules and leave the office on travel for a week at a time.

2. Although I am a certified mediator, I was not permitted to mediate Census cases, or mediate the Shared Neutrals program, more than once a month.

3. Since joining the organization in November 2008, I was prevented from performing at the level I was hired, and my authority as the Counseling Team Lead has been usurped and my overall performance of responsibilities was blocked.

4. I was given menial tasks, including listening to the office voice mail.

Initials _____                                                                 Page _____

5. I had items stolen from my work area, even though the area is key-card accessible only. When I brought this matter to the attention of Shipley and Castro, no action was taken to address this apparent internal breach of security.

6. Shipley harassed me, including calling my Blackberry to tell me that I cannot take leave, and saying that I had to report to work on my day off to take training that had been rescheduled.

7. Since November 2008, when I offered suggestions to assist the Agency and the EEO Office to bring them into compliance with the EEOC guidelines, I was ignored, attempts were made to intimidate me, and my suggestions were ignored until a crisis level was reached and EEO Office customer service compromised.

8. Since November 2008, I was assigned and performed work above my grade level, and despite being eligible for a promotion through accretion of duties, I was not promoted.

9. Despite raising my concerns of harassment and discrimination as the oldest African-American female in the workplace with Castro, he failed to take any action to address or resolve the aforementioned matters.

For the record, my race is African American and my date of birth is September 28, 1951. *At this time, I am adding two (2) additional bases to this instant complaint (disability and retaliation for my prior EEO activity). I confirm that my disabilities are Carpal Tunnel Syndrome, Osteoarthritis and Hypertension and I have previously participated in protected EEO activity. My previous EEO complaint was filed in 2004 (Agency Case Number 04-63-). Responding Management Officials (RMOs) in my prior EEO complaint are Susan E. Thomas, Chief, Program Implementation Division, Office of Civil Rights (OCR) and Susan J. Aramaki, Director, OCR. I also wish to indicate that these are examples of continuing discriminatory violations against me and are not limited to the events contained in this statement, all of which, as revealed, are to be included in this complaint. I therefore respectfully request that this instant complaint and my prior submission of discriminatory acts from 2004 be consolidated in this action to be submitted in evidence of such to be reviewed in this venue.

I came to the EEO arena as an Equal Employment Specialist (Counselor/Investigator), GS-0260-11, Equal Employment Opportunity (EEO) Office, U.S. Census Bureau, U. S. Department of Commerce in Silver Spring, Maryland in 2000. In 2002, I began working as a GS-11 at the Office of Civil Rights in the U. S.

Initials _C&H_                                                                                                           Page _2_

Department of Commerce. I began working in my prior job as a GS-0260-13 Team Lead in November 2008. My immediate supervisor was Cynthia Shipley, Deputy Director, EEO Office. My second level supervisor in my prior job was Roy P. Castro, Director, EEO Office. My third level supervisor was Ted Johnson, Associate Director for Administration/Chief Financial Officer. I believe that Ms. Shipley, Mr. Castro and Mr. Johnson subjected me to acts of disparate treatment and a pattern of harassment constituting a hostile work environment due to my race, age, disability and prior EEO activity. Ms. Shipley, Mr. Castro and Mr. Johnson were not directly involved in my prior EEO complaint but I believe they were contacted about my prior EEO activity by Ms. Thomas, Ms. Aramaki and John Gunther, Chief, Office of General Counsel between 2004 and 2006.

For the sake of clarity, the hostile work environment and harassment took place at all times even though the stated issues took place between November 2008 and the present .Ms. Shipley and Mr. Castro abruptly terminated their prior approval for me to telework or work from home one day per week: I was no longer allowed to telework on Wednesdays. When I was hired for the job in November 2008, they both agreed that I could telework on Wednesdays of each week. I would work from home on Wednesdays eight (8) hours per day or longer and I would work eight (8) hour days on Mondays, Tuesdays, Thursdays and Fridays in the office. During my interview for the job, I informed Ms. Shipley and Mr. Castro that I was working that same schedule in my previous job and they agreed that I would have the same work schedule if I was selected. No one else was present during the interview. When I first came on board, I continued to work the same schedule and periodically I would come into the office on Wednesdays because I wanted to get more acquainted with my new job. In March 2009, Ms. Shipley and I signed a written telework contract that contained the same telework schedule. A copy of that document will be provided.

Around May 10, 2009, Mr. Castro told me that I could no longer telework on Wednesdays or any other days. No one else was present when he gave me this directive. When I asked him why, he told me that he needed me to come to work because we do not have a lot of regular EEO Counselors and he needed me to come in on Wednesdays. In response, I told him that our caseload was low enough so that I did not need to be in the office on Wednesdays. I also asked him why my telework schedule was being terminated while he, Shipley and other employees are allowed to work alternate work schedules that allowed them to be out of the office one day a week and to go on travel for a week at a time. His response was that it is "just the way it has be". On three (3) separate occasions in June, July and August 2009, I asked Shipley to allow me to telework one Wednesday during each of those months but I gave me the same explanation as Mr. Castro and denied each of my requests.

Initials _____ Page 3

I do not agree with their explanation for terminating my telework agreement because I was not assigned any work that would have required me to be physically in the office on Wednesdays and in May 2009, I did not have an EEO Counselor workload. In September 2009, I made the decision to serve as an EEO Counselor for some more complicated cases in the office due to a medical situation with one of our EEO Counselors but I did not need to be physically in the office complete any of that EEO counseling activity.

I believe that Ms. Shipley and Mr. Castro took away my telework schedule due to my race because they did stop my non-African American co-workers from having alternate work schedules/teleworking. They are: Denise Brensinger (EEO Specialist/Assistant), and Cruiz Sedillio (Decennial Program Manager). I believe that they terminated my alternate work schedule (telework) due to my age because they have allowed my younger co-workers to retain their alternate work schedule. They are: Ms. Brensinger, Ms. Aronson, Mr. Sedillio, Kathy, Carol, Cindy and Castro, Bernadette Gray (Statistician). Mr. Castro and Ms. Shipley are aware of my disabilities and I believe that they terminated my alternate work schedule as a refusal to accommodate me because they have allowed my co-workers who are not disabled (to my knowledge) alternative work schedules and have accommodated them upon request. They are: Ms. Aronson, Mr. Sedillio, and Ms. Gray. I believe that this action was retaliation for my prior EEO activity because Ms. Shipley and Mr. Castro were aware of my prior EEO activity; they have direct contact and work with Ms. Thomas and Ms. Aramaki at OCR: I believe that they felt threatened when I questioned them about their decision to take this action and knew that they actions were retaliato9ry, and still carried them out.

This harassment affected my work performance and created a hostile work environment for me. It made me feel belittled. I think Ms. Shipley and Mr. Castro intended, by taking this action, to intimidate me in an attempt to control my every move. I also know by not allowing me an alternative work schedule that I have previously successfully worked for over six (6) years, Ms. Shipley and Mr. Castro accelerated the deleterious impact of my disabilities, therefore recreating physical compromise (decreased my effectiveness and lowered my job performance by. Prior to this change, I would normally work longer than an 8-hour workday from home on Wednesdays. I did not bring this or other issues in this complaint to the attention of Mr. Johnson or other management officials in my supervisory chain prior to initiating this complaint because I felt that Ms. Shipley and Mr. Castro would increase the level of harassment and continue if I contacted anyone else and I was right. In June 2009, I spoke with Bernadette Worthy, a friend and EEO Officer, about these issues; a few days later I initiated this complaint; and after I initiated this complaint, I asked Ms. Worthy to make Mr. Johnson aware of the issues in this complaint.

Initials _____                                                                                                          Page __4__

In regard to Issue # 2, in May 2009, Mr. Castro informed me in person and via e-mail (see attached) that I would not be permitted to mediate Census cases or the Interagency Shared Neutrals Program cases, more than once a month. He told me that he needed me to be physically in the office because we do not have a lot of regular EEO Counselors but he never made it clear as to why I needed to be physically in the office. I do not agree with his explanation for taking this action because I know that prior to September 2009, when one of our EEO Counselors got sick, we had a sufficient number of seasoned and knowledgeable EEO Counselors in the office. During my meeting with Mr. Castro to discuss this issue, I reminded him that I am a Lead Mediator for the Interagency Shared Neutrals Program and I mediated 3 to 4 cases per month for that program before I took the job. I also reminded him that we discussed my participation in this program during my interview for the job and neither he nor Ms. Shipley expressed any concerns regarding this matter at that time.

I believe that Mr. Castro issued this directive due to my race because he wants to limit my participation in the Interagency Shared Neutrals Program. I feel that if I were not African American, Mr. Castro would let me mediate whenever I want to. Ms. Brensinger is treated more favorably than me because Mr. Castro has allowed her to receive Mediator training, submit her application for the Shared Neutrals Program, and be accepted as a mediator in that program. I do not know how many times a month I is allowed to mediate Census and Shared Neutrals program cases. I also believe this action was taken due to my race because he allows employees of other races to do whatever they want to do. They are: Ms. Arsonson, Mr. Sedillio, and Ms. Brensinger.

I believe that Mr. Castro issued this directive due to my age because I think that he prefers to advance the careers of younger employees in my office. They are: Ms. Arsonson, Mr. Sedillio, Ms. Brensinger, and Ms. Gray. He refuses to allow me to mediate cases 3 or 4 times a month because that activity would allow me to grow and advance in my career. I should also say that this activity would in no way interfere with the agency's mission or my job performance. Mr. Castro is aware of my disabilities and I believe that he issued this directive due to my disability because he does not honor my physical disabilities and his directive limits my participation in career advancing opportunities. I believe that Mr. Castro's directive was retaliation for my prior EEO activity because he was aware of my prior EEO activity; he has direct contact and works with Ms. Thomas and Ms. Aramaki at OCR; and I believe that he felt threatened when I questioned him about his decision to take this action.

This harassment affected my work performance and created a hostile work environment for me because I have had to explain to high level management officials in other Federal agencies and the Interagency

Initials _CJSP_                                                             Page ___5___

Shared Neutrals Program that I can not complete my work for their agency due to Mr. Castro's directive. Their satisfaction with the program and my career and reputation has been tainted as result of this action. For reasons cited above, I did not bring this or other issues in this complaint to the attention of Mr. Johnson or other management officials in my supervisory chain prior to initiating this complaint.

In regard to Issue 3, after joining the organization in November 2008, both Castro and Shipley prevented me from performing at the level I was hired, my authority as the Counseling Team Lead was usurped and my overall performance of responsibilities was blocked.

Castro and Shipley spoke with Kathy Hopkins and Gina Battle, EEO Counselors, frequently (at least once a day) and continuously questioned them as to my instructions related to responses to Complainants and appropriate paperwork processing within EEOC guidelines and time frames, as if they were not aware of such. All EEO Counselors, including Carol Keeve, were constantly subjected to repeated unnecessary questions to inhibit and block their ability to complete work I supervised, thus directly impacting positive and timely completion of any work in the office.

As another example, both Castro and Shipley were aware that Hopkins was not completing work in EEO Track for her cases, and in fact did not know how to use this tool nor did she have it on her computer. Additionally, Hopkins had assignments for Special Emphasis Programs she avoided by scheduling doctor appointments on event days, and leaving on at least 9 occassions extra work on a limited staff. Hopkins also did not contact complainants in a timely manner, sent them to mediation to avoid counseling them, and avoided contacting them with EEOC timeframes. I repeatedly attempted to assist her and have other counselors help her, until other staff told me "they were tired of doing her work". Assistance did not change Hopkin's work performance.

Later, I was not allowed to rate Hopkins' performance as below average or marginal by Shipley. I was called into a session between Hopkins and Shipley after Hopkins' 2010 performance eval so Hopkins could ask me about her eval. I had already spoken with Shipley who knew of these insufficiencies in Hopkins' performance. I reiterated that Hopkins' work was not adequate nor equal to the other counselors, so her rating was appropriate. I overheard Hopkins saying her rating "interfered with her holiday shopping money". I feel Shipley was not interested in allowing me to succinctly evaluating employees' work, and told Hopkins "that's alright, I will take care of it", meaning I would change her eval score so I could get a higher rating, and more money as an award.

Initials _____   Page 6

I believe these actions were taken due to my race since other employees not African American (mentioned previously) were not scrutinized. allowed to make assessments of others they did not supervise (Gray) never questioned. This is just one example of how both management official(s) treated me differently from or more favorably than others under similar circumstances Castro and Shipley's actions were due to my age and disabilities. I also believe that Johnson, Thomas and Gunther thru Census Legal Department directed these actions thru oral and written communications in retaliation for this instant complaint and prior EEO activity.

I brought this specific allegation of harassment to the attention of other management officials in my supervisory chain. This harassment affected my work performance and/or created a hostile work environment for me. I was hypervigilant and overworking to the point of exhaustion, exaserbating my osteoarthristis and leaving me in pain 95% of the time in the office behind a computer without a telework option (I had successfully teleworked for 8 years prior to this time). I was unable to care for my daughter during a difficult pregnancy when she required bedrest due to their negligence for a 6 month period. I used as much leave as I could to monitor her condition. I suffered emotional and mental stress because of these and other Shipley/Castro actions. I brought this specific allegation of harassment to the attention of Johnson (Castro's supervisor) repeatedly in person in 2009 and 2010. He told me "he would speak to him (meaning Castro)". Nothing changed and everything got worse, leading to stated acts outlined in Issues 4, 5 and 6.

In regard to the aforementioned issues beginning with the time period stated, Castro and Shipley retaliated against me and discriminated against me for discriminatory bases stated in this instant complaint by assigning me menial tasks below my grade level. As an example, I was asked to do work previously assigned to our administrative staff and counselors. We had to clear both a regular and Decennial hotline voicemail email records each day and respond to each after listening to the office voice mail. There were as many as 50 voice mails per day, and duplicates daily. I was given no explanation as to why I had to do this since all of the administration staff and counselors carried the task of answering the voicemail email record daily as part of the key elements in their performance evaluation. Other staff of other races, younger than me, already mentioned, were relieved of this responsibility, and treated differently from and more favorably than me in this example. When I took leave, and in my absence , no one had even checked the voicemail email record and could be as many as 150 entries the office did not get since no one did this task. Upon return, I was expected to cover others work as well as mine by doing this task while others in my absence were not required to do o.

Initials _CJSP_                                                                                                 Page __7__

In or around Fall 2010, I left my office to talk to other Census staff about administrative issues. It was office policy for managers and team leads to leave their offices open in case their was a need to use them for private conference due to space limitations. Additionally, access to our area was monitored and restricted to EEO staff. I returned to my office to find a $100 bill missing from my wallet in my pocketbook in a desk drawer. I was very upset, having checked my wallet an hour earlier and this money was secure. I immediately informed Castro that the item had been stolen from my office. He shrugged it off when I told him I had an idea who took the money, so I went to the Security Office to complete a report and asked them for the security footage from the cameras in the building. When I informed Castro I had requested an investigation, he told me he did not think "that" would be necessary. I heard nothing further from him or Security. I believe Castro should have taken all available actions to address this and respond to me. His actions were discriminatory and retaliatory in that other younger staff, White Latino male without children and disabilities and EEO activity were continuously treated more favorably in all acts and events in the office under similar circumstances.

On or about Spring 2011, Shipley call my Blackberry after work hours and left a message telling me that I could not take leave and me to report to work on my day off to take training that had been rescheduled. She gave me no reasons for taking this action. I did not receive this message until 2 pm the next day due to technical difficulties, and was later reprimanded for it. Shipley's actions were discriminatory and retaliatory in that other younger staff, White Latino male without children and disabilities and EEO activity were continuously treated more favorably in all acts and events in the office under similar circumstances. Other staff (Gray, Hopkins, Aronson) called in sick repeatedly on training/special emphasis/presentation days, and their behavior was not reprimanded.

From November 2008, I offered many suggestions to assist the Agency and the EEO office to bring them into compliance with EEOC guidelines. For example, when I was assigned to rewrite Chapter 11, EEO Policies and Procedures, I suggested that we add language to include Census employees' interaction with service/delivery people and visitors, Castro then Legal, vetoed this addition and directed me to delete it from our text: we left the Agency uncovered nd vulnerable. Additionally, Shipley and Castro frequently missed deadlines in the EEO complaint process for timely processing, lost or misplaced paperwork, and files, neglected to input filings in our Tracking System and retain accurate information about complaints no matter how many times I made suggestions to them, until a crisis level was reached and EEO compliance was out of the question. We had constant requests from the OCR for documents and updates on filings we had to respond to, some of which I was not made aware of, which we failed to provide in a timely manner.

Initials _____     Page __8__

Because of the abovementioned events, I had to perform work above my grade level. I had to answer OCR, Census Legal, Johnson and OGC's phone calls frequently due to Shipley and Castro's frequent and unpredictable absences. I performed the following: organized a management advisory council for the EEO Office; responded to all Congressional responses regarding Census EEO activity; wrote and conduced training ordered in case settlements; order equipment when our fax machines broke and complainants could not send documents; get equipment and access to our website for Keeve to update our website; approve leave; cross-train employees to handle EEO complaint informal and formal procedures; provide IT help and troubleshoot internal problems for EEO staff; interphase with HR for document compliance; just to list a few of my work actions. I was not even offered a Special Act Award for singularly organizing and completing a signed poster from the children attending our first Census Take Your Youth to Work Day to the children of Japan via the Honorable John Voss, US Ambassador to Japan: he sent me a "thank you " letter and put the poster on display in the US Embassy in Japan.  Although Shipley and Castro were aware of this, nothing happened. Their actions were discriminatory and retaliatory in that other younger staff, White Latino male without children and disabilities and EEO activity were continuously treated more favorably in all acts and events in the office (given time off wards, and bigger monetary incentives) for less exemplary actions.

They gave me no reasons for not covering their own work responsibilities and supporting OCR, Census Legal and OCR.  Although they had lapsed salaries, they never tried to give me even a temporary promotion through an accretion of duties.

Lastly, from 2009 to 2011, whenever I raised my concerns of harassment and discrimination as the oldest African-American female in the workplace to Johnson, he avoided me by not giving me an appointment with him.  I believe that hey all failed to take any action to address or resolve the matters at issue in your complaint because of the bases I have stated, in retaliation for my prior EEO activity in order to harass me, negatively impact my work performance and created a hostile work environment for me.

I have read the above statement consisting of __9__ pages. I declare under the penalties of perjury that my statement is true, correct and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____   Executed on: __12/2/13__
Charla Sizemore Pearson                  Date

Initials _____                                                    Page _____